NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241216-U

NO. 4-24-1216

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 31, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Whiteside County |
| MICHAEL T. MORENO, | ) | No. 22CF86 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Patricia Ann Senneff, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Harris and Justice Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding (1) the evidence was sufficient for a fact finder to reasonably conclude defendant was guilty beyond a reasonable doubt of knowingly disseminating child pornography, (2) defendant forfeited his claim regarding the sufficiency of the trial court's admonishments when accepting his waiver of a jury trial, and (3) his aggregate term of 24 years' imprisonment was not excessive.

¶ 2    Defendant, Michael T. Moreno, following a bench trial, was convicted of two counts of child pornography (720 ILCS 5/11-20.1(a)(2) (West 2020)). He was subsequently sentenced to two consecutive 12-year terms of imprisonment. On appeal, he argues (1) the State failed to prove beyond a reasonable doubt he knowingly disseminated child pornography, (2) the trial court erred when accepting his jury waiver by failing to ensure he understood his waiver, and (3) the court imposed an excessive sentence. We disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In March 2022, defendant was charged by information with two counts of child pornography (*id.*) for disseminating a video file via his computer of a child he knew or reasonably should have known to be under the age of 13.

¶ 5                              A. Pretrial Proceedings

¶ 6        At a pretrial conference on July 26, 2023, the trial court stated it had been informed defendant intended to waive his right to a jury trial. The following exchange occurred:

"THE COURT: *** You acknowledge that that's your signature on the document waiving your right to a jury trial; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did anybody force you, threaten you or coerce you to get you to sign this document?

THE DEFENDANT: No, ma'am.

THE COURT: Did anybody promise you anything in exchange for signing this document?

THE DEFENDANT: No, ma'am.

THE COURT: Have you had a chance to discuss the consequences of signing this document with your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you believe that you need any additional time to have further discussion with her about that?

THE DEFENDANT: As far as I'm concerned, no, ma'am.

THE COURT: So you don't need any additional time to

discuss this further with your attorney?

THE DEFENDANT: Actually, yes, ma'am.

THE COURT: You'd like some additional time?

THE DEFENDANT: Yes, ma'am."

The matter was continued.

¶ 7        On August 30, 2023, the parties reconvened and, again, the trial court stated defendant intended to waive his right to a jury trial. The following exchange occurred:

"THE COURT: [Defendant], I've been furnished with a document entitled Plea and Waiver indicating that you are still pleading not guilty but waiving your right to a jury trial.

I'm going to show that document.

Is that your signature on it? (indicating)

THE DEFENDANT: Yes, it is.

THE COURT: Did anybody force you, threaten you or coerce you to get you to sign this document?

THE DEFENDANT: I'm sorry, could you please speak up?

THE COURT: I'm talking really loudly, but I sure will, but I need you to also. Okay?

I'm going to show you this document entitled Plea and Waiver.

Is that your signature on it? (indicating)

THE DEFENDANT: Yes, ma'am.

THE COURT: Did anybody force you, threaten you or

coerce you to get you to sign it?

THE DEFENDANT: No, ma'am.

THE COURT: Did anybody promise you anything in exchange for signing this document?

THE DEFENDANT: No, ma'am.

THE COURT: Have you had a chance to discuss with your attorney the consequences of signing this waiver?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you believe that you need any additional time to have further discussions about signing the waiver with your attorney?

THE DEFENDANT: No, ma'am.

THE COURT: Do you understand that if I accept this today you can't later come back into court and ask that your right to a jury trial be reinstated?

THE DEFENDANT: Yes, ma'am.

THE COURT: Knowing that, do you still wish to waive your right to a jury trial and request a bench trial?

THE DEFENDANT: Yes, ma'am.

THE COURT: I will accept this waiver as the Defendant's knowing and voluntary act."

¶ 8                                B. Bench Trial

¶ 9        The matter proceeded to a bench trial on December 6, 2023.

- 4 -

¶ 10        Joshua Heer of the Illinois State Police testified he supervised the Internet Crimes Against Children Task Force, for which he had received additional, specialized training, including training on BitTorrent, a peer-to-peer file sharing network, which he explained as follows:

> "It means that somebody has something that somebody else wants and electronically it is shared from one device to another. It could range from a picture of a turtle, it could range to schematics for how to build a ghost gun to the latest Jennifer Lawrence movie that's been highjacked online to child pornography."

He agreed peer-to-peer file sharing permits the "sharing of a computer file among computers or devices that are capable of connecting to the Internet." Heer specifically described BitTorrent as a "program that people use to share data," and other programs may be used to access the BitTorrent network, including BitTorrent, Libtorrent, and uTorrent.

¶ 11        Heer explained that, as part of utilizing the BitTorrent software, the user must agree to transfer files on the user's computer to other BitTorrent software users. He stated that without the user agreeing to transfer files, the software would not work. Heer stated a "file hash" is a unique identifier for torrents and analogized it to human DNA. He noted the National Center for Missing & Exploited Children (NCMEC) catalogs and stores file hashes for law enforcement investigators such as Heer to compare known images.

¶ 12        Heer stated when investigating users sharing child pornography, he uses proprietary software technology on his investigative computer. He explained the software looks for "Internet protocol [(IP)] addresses *** that are in the State of Illinois that are sharing files that are known to, by NCMEC through the hash value, contain child pornography."

¶ 13    Once he has the IP address, Heer uses different proprietary software to get an approximate location of where the IP address was located. He explained that individual Internet users have a unique IP address assigned to them by their Internet service provider.

¶ 14    Heer's investigative computer identified an IP address transmitting child pornography on December 31, 2021. The IP address traced back to Sterling, Illinois. Using different proprietary software, he identified the IP address as belonging to the Internet service provider Comcast. Heer described the child pornography his computer was able to download as depicting a girl under the age of 13 "that exposes her anus to the camera and turns around and exposes her vagina to the camera." He said, "[I]t is clear that the focal point of the video is the child's sex organs."

¶ 15    Heer's investigative computer identified an IP address transmitting child pornography on January 18, 2022. He stated it was the same IP address that transmitted child pornography on December 31. He described the child pornography file from January 18 as depicting "an adult male sexually assaulting a child."

¶ 16    After Heer identified the child pornography and the approximate location where the file had been disseminated from, he sent the information to Sergeant Nate Macklin of the Illinois State Police, who also investigated instances of child pornography within the Sterling region. Heer identified an exhibit as a DVD containing the child pornography he described that his investigative computer had downloaded from BitTorrent.

¶ 17    On cross-examination, Heer stated BitTorrent is legal. He disagreed an individual sending files through BitTorrent would not know they are sending files by stating, "[W]hen they put the application on their phone they agreed to that and that is exactly how that works. You are getting, and you are giving to make somebody else's packet complete as well." Regarding

whether users can choose not to share files, Herr explained:

> "You can exit the application, your computer would not share. While you are in the application, and if those files are still in and on your BitTorrent, it is going to share. That's the agreement that the user has.

> If you are downloading something yourself and you are looking for something, you are also sharing that thing in which you are obtaining from other people as well."

¶ 18 Brett Mango, a computer forensic analyst for the United States Department of Homeland Security, testified that on March 16, 2022, he assisted with a search warrant performed on an ASUS laptop located in defendant's home. The laptop was named "Michael," which was assigned by its owner. Mango used proprietary software to determine the laptop was running an application called uTorrent. He also explained uTorrent was a file sharing program. He noted several files of interest on the laptop that were consistent with child pornography.

¶ 19 Matthew Kipping of the Illinois State Police testified he executed a search warrant on March 16, 2022, at a home in Sterling where defendant resided with his sister and mother. He participated in the interview of defendant outside his residence in Sergeant Macklin's vehicle. He stated defendant was read his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), after which defendant agreed to speak with him and Sergeant Macklin. He denied any force or threats were used to coerce defendant into waiving his *Miranda* rights. Kipping identified a DVD exhibit of the interview conducted with defendant.

¶ 20 Sergeant Macklin testified he requested a subpoena for the subscriber of the IP address identified during Heer's investigation. From the information obtained by the subpoena,

Macklin obtained a search warrant of defendant's home. As a result of the search warrant, an ASUS laptop and external hard drive were recovered from defendant's bedroom. During the execution of the search warrant, Macklin interviewed defendant, with Kipping present. The interview was audio recorded and admitted into evidence without objection and played for the trial court. A synopsis of the recorded interview is as follows: defendant confirmed that the only electronic device he used was an ASUS laptop. Defendant denied using a virtual private network. He said it had been a long time since he had used BitTorrent. He denied his mother and sister used BitTorrent. He claimed he was unaware files on his computer were shared on BitTorrent. When confronted with the uTorrent licensing agreement and privacy policy requiring his agreement to share files, he stated, "Hmm, well, now I know." Defendant initially claimed to only use BitTorrent for downloading music, but when he was confronted with sexually graphic files he downloaded, he admitted to occasionally downloading adult pornography. He denied possessing a terabyte's worth of child pornography but conceded to having some child pornography images and videos. He did not know how the files ended up on an external hard drive found in his bedroom. He claimed he was "revolted" by child pornography, and it was an "accidental mishap" that he discovered while searching the Internet. However, he admitted to masturbating to the child pornography files he had downloaded and learned how to search for it on an Internet forum. He recalled becoming interested in child pornography in the last year.

¶ 21        Following the interview, Macklin stated defendant was taken to the Illinois State Police's district headquarters wherein he was shown an image "taken from one of the original torrents." Defendant told Macklin he recognized the image. Macklin had defendant sign and date the image. The image was admitted into evidence without objection. The image depicted a minor girl with a sexually explicit phrase written across the image. The image showed it was signed by

- 8 -

defendant and dated March 16, 2022.

¶ 22       Macklin stated the uTorrent licensing agreement and privacy policy advises users "that once they sign up for uTorrent that they are going to simultaneously share their own files." Macklin stated he downloaded uTorrent version 3.5.5 specifically during the investigation to read the licensing agreement because it was the version of uTorrent defendant had been using. A screenshot of the licensing agreement and privacy policy where it specifically discussed file sharing was admitted into evidence without objection. A highlighted portion of the exhibit stated, "Your use of the BitTorrent Applications to download files will, in turn, enable other users to download pieces of those files from you."

¶ 23       An exhibit containing the sexually explicit file names and torrent files downloaded from defendant's IP address was played for the trial court. Macklin stated he had reviewed the files, which depicted two girls who appeared to be under the age of 13.

¶ 24       Macklin confirmed the only devices that were recovered during the search warrant with evidence of interest to his investigation were the ASUS laptop and hard drive recovered from defendant's bedroom.

¶ 25       The State rested.

¶ 26       Defendant moved for a directed verdict, arguing specifically that the State had failed to show he disseminated any child pornography. The trial court denied defendant's motion.

¶ 27       Defendant did not present any evidence.

¶ 28       The trial court found the State had met its burden and found defendant guilty on both counts. The court noted the only real issue of contention was whether he knowingly disseminated the child pornography he downloaded from BitTorrent. The court pointed to the

licensing agreement and privacy policy that required users to consent to file sharing to utilize the application. Additionally, the court stated defendant's recorded interview showed he "seemed to be particularly savvy about many of these terms and the use of this application."

¶ 29                                    C. Posttrial Proceedings

¶ 30            On January 5, 2024, defendant filed a motion for a new trial, arguing the State had failed to prove each element of the offenses beyond a reasonable doubt. At the hearing, defendant additionally contended the police tampered with the video evidence by altering it and lied during their testimony. He also argued he deserved a new trial because he did not personally receive all of the discovery. The trial court denied defendant's motion.

¶ 31            The matter immediately proceeded to sentencing. A presentence investigation report (PSI) was admitted into evidence. Defendant contended the only error was an incorrect phone number for his mother and that, despite information received by court services stating he was never an employee of "P & P Industries and Manpower," he maintained he did work for that company for a short period of time. The PSI showed defendant had no criminal history. He reported he was sexually abused by a "male that [his] mom had brought around the family" when he was "11/12" years old. He informed his mother about the incident, but "she could not afford counseling for him." He denied any alcohol or substance abuse issues. He was a high school graduate, single, and had no children. He reported caring for his mother, who was disabled. He did not have a relationship with his father, who had died three or four years earlier.

¶ 32            Sally Moreno, defendant's mother, testified defendant was "a good person" and "helpful." She noted he assisted her with various tasks and that he did not have a good relationship with his father. She said defendant "stay[ed] out of trouble" and recalled a time when he was homeless, which is why they moved to Sterling.

¶ 33 The trial court stated it had considered the evidence at trial, the PSI, the financial impact of incarceration, and the factors in aggravation and mitigation. The court noted it was a "plus" defendant had no prior criminal history and cared for his mother. The court stated the "most compelling" factor in aggravation was deterrence to others. The court referenced the "appalling" videos published at trial and noted defendant "seemed particularly savvy" with his ability to access the videos. The court said that although the victims were unknown, what occurred to "these young ladies [was] despicable and has really robbed them of their childhoods and the fact that somebody would knowingly access these videos [was] an activity that certainly need[ed] to be deterred." The court sentenced defendant to two consecutive 12-year terms of imprisonment.

¶ 34 On March 28, 2024, defendant filed a motion to reconsider his sentence. The motion argued the court placed excessive weight on the factors in aggravation while placing insufficient weight on the factors in mitigation. The motion further argued the sentence was excessive and disproportionate to the nature of the offense. The trial court denied defendant's motion.

¶ 35 This appeal followed.

¶ 36 II. ANALYSIS

¶ 37 On appeal, defendant argues (1) the State failed to prove beyond a reasonable doubt that he knowingly disseminated child pornography, or, in the alternative, disseminated it intentionally or recklessly; (2) the trial court erred when accepting his jury waiver by failing to ensure he understood his waiver; and (3) the court imposed an excessive sentence. We address each claim in turn.

¶ 38 A. Sufficiency of the Evidence Claim

¶ 39    When examining the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original and internal quotation marks omitted.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The trier of fact has the responsibility to assess the witnesses' credibility, weigh their testimony, resolve inconsistencies and conflicts in the evidence, and draw reasonable inferences from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). We will not reverse a criminal conviction based on insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Murray*, 2019 IL 123289, ¶ 19.

¶ 40    For child pornography as charged in the instant matter, the State had to prove defendant, with the knowledge of the nature or content thereof, disseminated any film, videotape, photograph, or other similar visual reproduction or depiction by computer of any child whom he knows or reasonably should have known to be under the age of 18. 720 ILCS 5/11-20.1(a)(2) (West 2020).

¶ 41    The legislature has defined "disseminate" as follows:

"(i) to sell, distribute, exchange or transfer possession, whether with or without consideration or (ii) to make a depiction by computer available for distribution or downloading through the facilities of any telecommunications network or through any other means of transferring computer programs or data to a computer."

*Id.* § 11-20.1(f)(1).

¶ 42    Defendant only challenges whether the State had proven the requisite mental state

- 12 -

for the proposition of whether he disseminated any child pornography. As an initial matter, the parties correctly note the statute itself does not designate a particular mental state associated with the dissemination of child pornography. The parties present various arguments for whether the appropriate mental state is knowingly, intentionally, or recklessly. The legislature has already addressed this issue regarding the applicable mental state:

> "If the statute defining an offense prescribed a particular mental state with respect to the offense as a whole, without distinguishing among the elements thereof, the prescribed mental state applies to each such element. If the statute does not prescribe a particular mental state applicable to an element of an offense (other than an offense which involves absolute liability), any mental state defined in Sections 4-4, 4-5 or 4-6 [(*id.* §§ 4-4, 4-5, 4-6)]is applicable." *Id.* § 4-3(b).

The charged offense in this instance only identifies one mental state at the beginning: knowledge. As such, knowledge would apply to each subordinate element within the offense. *Id.* Accordingly, we agree with defendant that the appropriate *mens rea* applicable here would be knowledge.

¶ 43　　　　Defendant argues the State's central evidence he knowingly disseminated child pornography was his acceptance of the uTorrent licensing agreement and privacy policy that required users to agree to share portions of the files they download from the BitTorrent network. He notes, during his interview with officers Macklin and Kipping, he did not know BitTorrent users shared portions of the files they downloaded, and he did not know about the licensing agreement and privacy policy statement requiring users to share files that had been downloaded.

Additionally, he notes from Sergeant Macklin's testimony that it was possible for a user to access BitTorrent without reading the entirety of the licensing agreement and privacy policy, which he argues further corroborates his contention he was unaware BitTorrent automatically shared any files he downloaded. He cites *People v. Daigle*, 2024 IL App (4th) 230015, in support.

¶ 44　　　　In *Daigle*, we dealt with the same specific issue on appeal: whether the defendant knowingly disseminated child pornography. *Id.* ¶ 61. In that case, we noted the defendant was keenly aware he was using file sharing software that required the user to agree to share videos with other users. *Id.* ¶ 63.

¶ 45　　　　While the issue was less ambiguous in *Daigle*, we are not persuaded by defendant's argument *Daigle* is applicable here. When reviewing the evidence in a light most favorable to the prosecution to determine if *any* rational trier of fact could have found defendant guilty beyond a reasonable doubt, we find the evidence still supports the State's contention that defendant knowingly disseminated child pornography. Defendant places significant emphasis on his declared ignorance during his interview with police of the uTorrent licensing agreement and privacy policy, as well as his ignorance of how BitTorrent functions. However, during the interview, defendant made several statements that he later contradicted. For example, he initially claimed to only use BitTorrent for downloading music but later admitted to downloading pornography. He also claimed to be revolted by child pornography, only to later admit to downloading and masturbating to it.

¶ 46　　　　In a light most favorable to the prosecution, defendant's credibility is debilitated at best. Additionally, the trial court, acting as the fact finder, found he was incredibly savvy regarding BitTorrent. "[A] reviewing court will not substitute its judgment for that of the trier of

fact on issues involving the weight of the evidence or the credibility of the witnesses." *Murray*, 2019 IL 123289, ¶ 19. The court used this finding to call into question that defendant was unaware of how BitTorrent operated or the contents of its licensing agreement. As a fact finder, it was the court's responsibility to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inference from basic facts to ultimate facts. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A defendant's mental state is rarely proven by direct evidence, and, as such, is generally inferred from the character of the defendant's acts and from the circumstances surrounding the commission of the offense. *People v. Eubanks*, 2019 IL 123525, ¶ 74. "[T]he trier of fact is in the best position to determine whether a particular mental state is present." *People v. Pollard*, 2015 IL App (3d) 130467, ¶ 27.

¶ 47        After reviewing the evidence at trial and the trial court's factual findings, we find nothing so unreasonable, improbable, or unsatisfactory to create a reasonable doubt of defendant's guilt. There was evidence presented showing defendant was required to accept the uTorrent licensing agreement to share files he downloaded and that he understood how the BitTorrent file sharing software operated. The court, acting as a fact finder, was not required to believe defendant did not read the licensing agreement, even though it was possible, and the court was not required to believe defendant's statements he was unaware BitTorrent shared files that he downloaded. Therefore, we find a rational trier of fact could reasonably conclude beyond a reasonable doubt that defendant knowingly disseminated child pornography. Because we have found the mental state applicable to the offense is knowledge and the evidence sufficiently supports defendant knowingly disseminated child pornography, we need not address defendant's alternative arguments of whether he intentionally or recklessly disseminated child pornography.

¶ 48                      B. Jury Waiver Claim

¶ 49        Defendant next argues the trial court failed to sufficiently ensure that he understood he was waiving his right to a jury trial, thereby making his waiver invalid. He concedes no contemporaneous objection was made regarding his jury waiver and the issue was not raised in his posttrial motion. See *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) (noting where a defendant fails to object at trial and raise the issue in a posttrial motion, the issue is forfeited). Therefore, he requests we review this issue under the second prong of the plain-error doctrine.

¶ 50        The plain-error doctrine provides a "narrow and limited exception," permitting courts of review to address forfeited claims. *People v. Reese*, 2017 IL 120011, ¶ 72. Under the plain-error doctrine, a reviewing court may disregard a defendant's forfeiture and consider an unpreserved claim of error where:

> " '(1) a clear or obvious error occurred and the evidence is so
> closely balanced that the error alone threatened to tip the scales of
> justice against the defendant, regardless of the seriousness of the
> error, or (2) a clear or obvious error occurred and that error is so
> serious that it affected the fairness of the defendant's trial and
> challenged the integrity of the judicial process, regardless of the
> closeness of the evidence.' " *People v. Thompson*, 238 Ill. 2d 598,
> 613 (2010) (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565
> (2007)).

Under either prong of the plain-error doctrine, the defendant bears the burden of persuasion. *People v. Wilmington*, 2013 IL 112938, ¶ 43. "The first step of plain-error review is determining whether any error occurred." *Thompson*, 238 Ill. 2d at 613.

¶ 51           "The right to a trial by jury is a fundamental right guaranteed by our federal and state constitutions." *People v. Bracey*, 213 Ill. 2d 265, 269 (2004). A defendant may waive the right to a trial by jury, but a jury waiver must be knowingly and understandingly made to be valid. *Id.* The question of whether a jury waiver is valid is determined by the particular facts and circumstances of each case, and the trial court "need not impart to [a] defendant any set admonition or advice." *Id.* at 270.

¶ 52           Defendant concedes he signed a written waiver of his right to a jury trial that specifically demanded a trial before a judge. See *id.* at 269-70 (stating a written jury waiver "is not always dispositive of a valid waiver"). He argues the trial court thoroughly ascertained whether he was voluntarily waiving his right to a jury trial but failed to explain the difference between a jury trial and a bench trial. He contends someone with no criminal history would not necessarily understand the difference between the two modes of trial. He notes that after the first attempt to waive a jury trial, he requested more time to speak with trial counsel, which was permitted by the court. He contends the record does not reveal what he discussed with counsel. He concludes that because the court failed to explain the difference between a bench and jury trial and that he was waiving a constitutional right, he did not understandingly waive his right to a jury trial. We disagree.

¶ 53           The record shows defendant had initially intended on waiving his right to a jury trial at a pretrial conference in July 2023. However, when the trial court was reviewing defendant's waiver, he requested more time to speak with his trial counsel. The court granted him a continuance to discuss the matter further with his counsel. Defendant is correct that the record does not reveal the extent of his conversation with counsel. Yet, when he returned in August 2023, he explained to the court he had sufficiently discussed the matter with his counsel

and subsequently waived his right to a jury trial. Defendant is also correct that the court never explicitly discussed the differences between a bench and jury trial. As we noted earlier, there is no set admonition a court must give a defendant when waiving a jury trial. *Id.* at 270. The written waiver clearly articulates defendant was waiving a jury trial to have the matter tried before a judge. Given defendant had requested more time to discuss his jury waiver with counsel, we find it unlikely counsel—who had demonstrated competency in other aspects of her representation of defendant—utterly failed to explain to defendant the difference between a bench and jury trial prior to his jury waiver. "When a defendant waives the right to a jury trial, the pivotal knowledge that the defendant must understand—with its attendant consequences—is that the facts of the case will be determined by a judge and not a jury." *People v. Bannister*, 232 Ill. 2d 52, 69 (2008). Defendant points to the deficiencies in the court's admonitions but never identifies anything other than his lack of a prior criminal history as a reason to believe he did not understand he was waiving his constitutional right to a jury and proceeding to a bench trial. This will not suffice to meet his burden. "A jury waiver will not be held invalid where a defendant unambiguously chooses a bench trial with his counsel at his side unless some prejudice to the defendant is alleged and proved." *People v. Akis*, 63 Ill. 2d 296, 300 (1976). Therefore, we find defendant has failed to show error, let alone plain error. Accordingly, we honor his forfeiture of this issue.

¶ 54                                C. Excessive Sentence Claim

¶ 55            Finally, defendant argues the trial court abused its discretion when it sentenced him to an aggregate term of 24 years in prison for the offense of what he contends amounted to essentially the possession of child pornography. He argues the court's rationale for imposing a harsher sentence focused almost entirely on his possession of child pornography.

¶ 56      "The legislature sets forth by statute the range of permissible sentences for each class of criminal offense." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). A reviewing court affords great deference to a trial court's sentencing judgment because, "having observed the defendant and the proceedings, [it] is in a far better position to consider such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, and habits than a reviewing court, which must rely on a 'cold' record." *People v. Little*, 2011 IL App (4th) 090787, ¶ 24. A sentence that falls within the applicable statutory limits is reviewed for an abuse of discretion. *People v. Price*, 2011 IL App (4th) 100311, ¶ 36. The abuse of discretion standard is deferential to sentencing courts. *People v. Fisher*, 407 Ill. App. 3d 585, 589 (2011). "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20 (quoting *Fern*, 189 Ill. 2d at 54).

¶ 57      Here, defendant was found guilty of two counts of child pornography, both Class X felonies. 720 ILCS 5/11-20.1(c) (West 2020). As such, defendant was subject to a term of imprisonment of 6 to 30 years in prison for each offense. 730 ILCS 5/5-4.5-25(a) (West 2020). Additionally, the trial court was required to impose the sentences consecutively, for a potential aggregate term of 12 to 60 years in prison. *Id.* § 5-8-4(d)(2.5). Defendant was sentenced to 12 years' imprisonment for each offense for an aggregate term of 24 years' imprisonment. Because defendant's sentence was within the permissible range, we begin with the presumption the sentence was proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 58      In this case, the trial court found a need for deterrence as a factor in aggravation. The court also noted numerous mitigating factors in defendant's favor, such as his lack of a prior

criminal history and his helpful conduct in caring for his disabled mother. However, the fact that mitigating factors existed in defendant's case does not outweigh the aggravating factor the trial court noted in its decision. A trial court is not required to afford greater weight to mitigating factors than to the severity of the offense. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010); see *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002) (noting the seriousness of the offense is the most important sentencing factor). While defendant contends he was merely guilty of possessing child pornography, the conviction and sentence imposed reflect he was found guilty of disseminating child pornography. The trial court was correct to note the appalling nature of the videos defendant possessed and disseminated. The court was also correct to note that while the victims were unknown, the young girls depicted were deprived of a suitable childhood. Defendant's attempts to minimize the offense to mere possession of child pornography fail because his downloading of such content remains a very serious offense that fuels the need for a black market of such content. His possession and subsequent dissemination of child pornography is even graver by contributing to the supply of such heinous content.

¶ 59 The record shows the trial court considered the mitigating factors present in this case. However, as stated, the presence of mitigating factors does not require a minimum sentence. *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. Ultimately, the court was in a better position to observe defendant's conduct and weigh the need for a sentence beyond the minimum statutory requirement. We reiterate defendant faced an aggregate sentencing range of 12 to 60 years in prison. The imposed sentence of 24 aggregate years' imprisonment was middling and not devoid of reasons, as explained by the trial court. "[A]n abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *People v. McDonald*, 2016 IL 118882, ¶ 32. Nothing from this

record suggests the court's sentencing determination was arbitrary, fanciful, or unreasonable. Accordingly, we find no reason to conclude the court's sentence was disproportionate to the nature of the offense.

¶ 60                                   III. CONCLUSION

¶ 61            For the reasons stated, we affirm the trial court's judgment.

¶ 62            Affirmed.